**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

CYNTHIA DELUCA, et al.,

      Plaintiffs,

          v.

CITY OF HAZELTON, et al.,

      Defendants.

CIVIL ACTION NO. 3:15-CV-02475

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me is a motion to dismiss (Doc. 10) Plaintiffs Cynthia DeLuca ("DeLuca") and DeLuca's Auto Repair and Towing, Inc.'s (collectively "Plaintiffs") Complaint (Doc. 1) filed by Defendants City of Hazleton, Hazleton Police Department, Frank V. DeAndrea, Jr., and Joseph Yannuzzi (collectively "Defendants").

Plaintiff DeLuca contends that Defendants removed her from the vehicle towing rotation list for the City of Hazleton in retaliation for protected First Amendment conduct, and in violation of her procedural and substantive due process rights under the Fourteenth Amendment. She also brings claims for defamation and commercial disparagement under Pennsylvania law.

For the reasons that follow, Defendants' motion to dismiss the Complaint will be granted in part and denied in part, with the following being the only remaining claims: Counts I, II, and III, alleging that Defendants City of Hazleton, Yannuzzi, and DeAndrea retaliated against Plaintiffs in violation of their First and Fourteenth Amendment rights, and Counts IV and V, alleging that Defendants City of Hazleton, Yannuzzi, and DeAndrea deprived Plaintiffs of a protected liberty interest without due process.

### I. Factual Background

The facts, as set forth in Plaintiffs' Complaint (Doc. 1), are as follows:

Plaintiff Cynthia DeLuca is the owner of DeLuca's Auto Repair & Towing, Inc, which

is in the business of towing vehicles. Defendant City of Hazleton maintains a rotation list of available companies to perform towing services at its request. Prior to June 9, 2015, DeLuca received towing assignments on a rotating basis with other approved towers. On June 9, 2015, however, DeLuca's Auto Repair & Towing, Inc, was removed from the towing rotation list after a posting on DeLuca's Facebook page accused the Hazleton Police Department, the Mayor of the City of Hazleton Joseph Yannuzzi, and the Chief of Police Frank V. DeAndrea, Jr., of criminal acts.

By a letter dated June 9, 2015, the City of Hazleton, acting through its Chief of Police, Frank V. DeAndrea, Jr., suspended DeLuca from towing vehicles for the City for a period of three years. The letter stated, in full:

> In accordance with Hazleton Police Department Towing Service requirements section 1.06 SUSPENSION OF TOWING SERVICE(S) you are hereby notified that your business has been suspended from towing vehicles for the City of Hazleton.
> The specific reasons for this suspension under section six Repeated conduct by any employee of the towing service of a nature which, by means of the relationship the service has with the Department, tends to demean the public image of the Department are as follows:
> Facebook posting under your personal account have accused the Mayor of the City of Hazleton with being criminal and accepting bribes. This by means of the relationship DeLuca's Towing has with the City of Hazleton and the Hazleton Police Department, tends to demean the public image of the Department.
> Your suspension shall be for three years. It shall commence immediately and shall end June 10, 2018. Prior to your towing service becoming eligible to receive service calls at the end of this suspension you must take appropriate remedial action. Your towing services recourse to this suspension is through civil litigation.

(Doc. 1, Ex. A, at 23). Thereafter, a news article about DeLuca's suspension appeared in a local newspaper. The article states, in pertinent part:

> City officials have suspended a towing company from municipal service for three years over alleged remarks made on a Facebook page, but the owner believes she is the victim of a political vendetta.
> In an interview with the Times Leader, Mayor Joe Yanuzzi (sic) did acknowledge that tower Cynthia DeLuca had supported a woman he considered his opponent in May's primary election, and criticized her for that support.

(*Id.* at 30-34, Ex. D).

2

In response to the notice of suspension, DeLuca, through her counsel, requested "either a rescission of the suspension or a hearing on the suspension in the nature of an appeal." (*Id.* at 25-26, Ex. B). On June 17, 2015, Defendant DeAndrea issued a revised notice of suspension which provided, in part:

> The suspension is pursuant to Section 1.06 (C)(3) of the Towing Requirements Policy: "The commission of an act by an owner or manager of a towing service involving dishonesty or corruption, when the act directly or indirectly affects the health, welfare or safety of others". The Facebook posting under "Hazleton' s Corrupts" created under your name and Facebook account has accused the Hazleton Police Department, the Mayor, Frank Vito and I of being corrupt, accepting bribes and improperly discriminating against your towing company (which is untrue). I enclose a copy of the policy for your convenience. I note that you were given a copy of same when you were originally placed on the list, which you consented to.
> . . .
> I am copying your Attorney, Kimberly D. Borland, Esq. with this Notice. The Hazleton City Solicitor, Robert M. Cohen, Esq., advises Mr. Borland that no appeal hearing will be provided in this matter, his recourse is via suit, per Section 1.06(F) of the policy. Additionally, any suit claiming constitutional protection of free speech and association for this activity will be met with a counterclaim for defamation and attorney's fees.

(*Id.* at 28, Ex. C).

DeLuca alleges that approximately one week prior to issuance of the first suspension letter, she brought the Facebook posting to the attention of Defendant DeAndrea and informed him that, although the posting appeared on her Facebook page, she was not its author. DeLuca claims that her Facebook account had been hacked.

DeLuca further alleges that sometime in November of 2015, Defendant DeAndrea appeared at DeLuca's Auto Repair & Towing, Inc. and informed DeLuca that the reason her towing rights were suspended was because of her political support for Grace Cuozzo, who was Defendant Yannuzzi's political opponent in the May 2015 primary election for Mayor. Indeed, during the spring of 2015, DeLuca openly supported Cuozzo for Mayor of the City of Hazleton.

In light of the foregoing events, on December 23, 2015, DeLuca and her towing company filed a nine-count civil rights Complaint (Doc. 1) against Defendants.

3

The Complaint contains the following claims: (1) Count I alleging that Defendants City of Hazleton and Hazleton Police Department retaliated against Plaintiffs in violation of their First and Fourteenth Amendment rights; (2) Count II alleging that Defendant Yannuzzi retaliated against Plaintiffs in violation of their First and Fourteenth Amendment rights; (3) Count III alleging that Defendant DeAndrea retaliated against Plaintiffs in violation of their First and Fourteenth Amendment rights; (4) Count IV stating a procedural due process claim, alleging that Defendants City of Hazleton, Hazleton Police Department, Yannuzzi, and DeAndrea deprived Plaintiffs of their protected liberty interest without a pre-deprivation hearing; (5) Count V stating a procedural due process claim, alleging that Defendants City of Hazleton, Hazleton Police Department, Yannuzzi, and DeAndrea deprived Plaintiffs of their protected liberty interest without a post-deprivation hearing; (6) Count VI stating a substantive due process claim, alleging that Defendants City of Hazleton, Hazleton Police Department, Yannuzzi, and DeAndrea deprived Plaintiffs of their liberty interest protected under the Fourteenth Amendment; (7) Count VII alleging a 42 U.S.C. § 1985 claim of conspiracy to deprive Plaintiffs of their First and Fourteenth Amendment rights;[1] (8) Count VIII alleging a state law commercial disparagement claim against Defendants Yannuzzi and DeAndrea; and (9) Count IX alleging a state law defamation claim against Defendants Yannuzzi and DeAndrea.

Defendants have moved to dismiss all claims. (Docs. 10, 11). The motion has been fully briefed (Docs. 12, 13, 16) and is now ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed.

---

[1] This claim has been subsequently amended as stating a § 1983 claim, not § a 1985 one. (Doc. 12, at 18).

R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *Id*. A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S. Ct. 1937.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id*. The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

### III. Discussion

Defendants advance a series of arguments seeking dismissal of the Complaint in its entirety. For the reasons that follow, the motion to dismiss will be granted in part and denied in part.

**A.     Count I - Defendants City of Hazleton's and Hazleton Police Department's Violations of Plaintiffs' First and Fourteenth Amendment Rights**

Preliminarily, I will dismiss the Hazleton Police Department from the suit. A municipal police department cannot be sued separately from the municipality of which it is a part because it is not an independent entity. *Johnson v. Bingnear*, 441 Fed. Appx. 848, 852 (3d Cir. 2011); *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n. 4 (3d Cir.1997). Accordingly, I will treat all the claims against the Police Department as if they were asserted against the City of Hazleton only.

In Count I of their Complaint, Plaintiffs argue that the "suspension of the towing rights of the Plaintiffs was in violation of Plaintiffs' rights of speech, association, and political affiliation, as guaranteed by the First and Fourteenth Amendment[s] of the United States Constitution." (Doc. 1, ¶ 51). In First Amendment retaliation cases, a plaintiff can sustain her burden of proof only if her conduct was constitutionally protected, and, therefore, only if there actually was conduct. *Fogarty v. Boles*, 121 F.3d 886, 890 (3d Cir.1997). Here, because DeLuca denied that she made any statements at all, arguing instead that her Facebook account had been hacked, "the absence of speech—in fact, its explicit disclaimer by plaintiff—is fatal to the plaintiff's claim." *Id.* at 891. *See also Ambrose v. Twp. of Robinson*, 303 F.3d 488, 495 (3d Cir. 2002) ("[T]here can be no First Amendment claim when there is no speech by the plaintiff.").

DeLuca argues, however, that there is sufficient evidence to support the allegation that the removal from the rotation list was in retaliation for her support of Grace Cuozzo, who was Defendant Yannuzzi's opponent in the May 2015 primary election for Mayor. (Doc. 12, at 13).

The First Amendment protects public employees from retaliation by their employer only in some cases. The Third Circuit has articulated a three-step test to evaluate whether

public employees may sue to enforce their First Amendment rights under 42 U.S.C. § 1983.[2] *See Baldassare v. State of New Jersey*, 250 F.3d 188, 195-96 (3d Cir.2001); *San Filippo v. Bongiovanni*, 30 F.3d 424, 430-31 (3d Cir.1994); *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir.1993). First, a plaintiff must show that her conduct was constitutionally protected. *Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 493 (3d Cir. 2002) (citing *Bd. of Cnty. Comm'rs. v. Umbehr*, 518 U.S. 668, 675 (1996)). Second, a plaintiff must show that the protected activity "was a substantial factor in the alleged retaliatory action." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568 (1977). Third, the employer may defeat the employee's claim by demonstrating that the same adverse action would have taken place in the absence of the protected conduct. *Ambrose*, 303 F.3d at 493; *Swineford v. Snyder County Pa.*, 15 F.3d 1258, 1270 (3d Cir. 1994).

Defendants argue that Plaintiffs are unable to state a plausible claim for retaliation for the alleged support of a political candidate because "[they] cannot show causation," conceding the other elements of the three-step test. (Doc. 11, at. 7). Defendants contend that "it is abundantly clear from the Complaint that the removal resulted from the Facebook post, not DeLuca's support for a primary candidate." *Id*. However, in establishing causation, or the "substantial or motivating element", a plaintiff need not show that the conduct was the sole, dominant, or primary reason. *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977)). Rather, a plaintiff is simply required to show that the decision was motivated *in part* by the

---

[2] Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured, . . ." 42 U.S.C. § 1983. "To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (citing *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998)).

activity. *Id.*

Here, DeLuca states a plausible claim that the removal from the towing rotation list was, at least partially, motivated by her political activity. On June 10, 2015, one day after issuing the initial suspension letter, Yannuzzi acknowledged in an interview with a local newspaper that DeLuca "had supported a woman he considered his opponent in May's primary election and criticized her for that support." (Doc 1, at 31). Moreover, "when asked about the suspension, Yannuzzi initially cited city regulations when asked why the business was suspended. But he immediately acknowledged his belief that DeLuca's strong support of Cuozzo during her campaign was 'over the top.'" (*Id.* at 32). Plaintiffs also allege that one of the defendants, Chief of Police DeAndrea, "appeared at DeLuca's Auto Repair & Towing, Inc. and informed [DeLuca] that the reason Plaintiffs' towing rights were suspended was because of Plaintiffs' political support for Ms. Cuozzo." (Doc. 1, ¶ 39).

Accepting as true all the facts alleged in the Complaint, I find that Plaintiffs' legal conclusions are supported by sufficient factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 664. There is "more than a sheer possibility that a defendant has acted unlawfully" and that their actions were *in part* motivated by Plaintiffs' political support for Yannuzzi's political opponent. *Phillips v. County of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008). Defendants' motion to dismiss Plaintiffs' retaliation claim will be denied.

**B.     Counts II & III - Defendants Yannuzzi's and DeAndrea's Violations of Plaintiffs' First and Fourteenth Amendment Rights**

In Counts II and III, Plaintiffs assert the same claim of retaliation in violation of the First Amendment against two individuals, Yannuzzi and DeAndrea. (Doc. 1, ¶¶ 54-61). Because I have already found that Plaintiffs state a plausible claim for retaliation, I will analyze only whether, as Defendants contend, "DeAndrea and Yannuzzi are entitled to qualified immunity because the clearly established law did not condemn their actions." (Doc.

9

11, at 13).

The defense of qualified immunity shields government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The standard for applying qualified immunity is an objective one. In *Hunter v. Bryant*, 502 U.S. 224 (1991), the Supreme Court recognized that "the qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* at 229 (citation and internal quotation marks omitted).

The Third Circuit has held that "qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001). In order to defeat an assertion of qualified immunity, a plaintiff must allege that the official violated a "clearly established" right. Anderson, 483 U.S. at 635. A plaintiff does not fulfill this requirement simply by alleging that the defendant violated some constitutional provision. *McLaughlin v. Watson*, 271 F.3d 566, 571 (3d Cir. 2001). Rather, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense." McLaughlin, 271 F.3d at 571 (quoting Anderson, 483 U.S. at 640). As the Third Circuit has explained, "clearly established rights" are those with contours sufficiently clear that a reasonable official would understand that what he is doing violates that right. McLaughlin, 271 F.3d at 571. "Although officials need not predic[t] the future course of constitutional law, they are required to relate established law to analogous factual settings." *Id.* (citations omitted). The essential inquiry is whether a reasonable official in the defendant's position at the relevant time "could have believed, in light of clearly established law, that [his or her] conduct comported with established legal standards." *Id.* (citations omitted).

Here, Defendants DeAndrea and Yannuzzi claim that they "acted reasonably, and no clearly established law by the U.S. Supreme Court or Third Circuit would have led them to act otherwise." (Doc. 11, at 13). I disagree.

Taking the allegations in the Complaint as true, Defendants DeAndrea and Yannuzzi retaliated against Plaintiffs by removing them from the towing rotation list, at least in part, because of DeLuca's support for Yannuzzi's political opponent. As the Third Circuit has held, a plaintiff does not need to show that the very action in question has previously been held unlawful, but rather, it is sufficient to show that in light of preexisting law, the unlawfulness of the defendant's conduct was apparent. *Shea v. Smith*, 966 F.2d 127, 130 (3d Cir. 1992).

Here, the general constitutional rule that public employees cannot be retaliated against for exercising their rights under the First Amendment has long been established. *Cipriani v. Lycoming County Hous. Auth.*, 177 F.Supp.2d 303, 327 (M.D.Pa.2001) (citing *Baldassare v. New Jersey*, 250 F.3d 188, 201 (3d Cir.2001)). In fact, the Supreme Court has frequently found retaliation in violation of the First Amendment in cases in which the plaintiff's public employment was affected in some way. *See, e.g.*, Umbehr, 518 U.S. at 684, 116 S.Ct. at 2352 (failure to renew contract of independent contractor); *O'Hare Truck Service, Inc. v. City of Northlake*, 518 U.S. 712, 116 S.Ct. 2353, 2361 (1996) (same); *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 75, 79, 110 S. Ct. 2729, 2739 (1990) (failure to hire, retire, promote, or transfer); *Rankin v. McPherson*, 483 U.S. 378, 383-84, 107 S. Ct. 2891, 2896 (1987) (discharge); *Branti v. Finkel*, 445 U.S. 507, 520, 100 S.Ct. 1287 (1980) (discharge); *Givhan v. Western Line Consol. School Dist.*, 439 U.S. 410, 416–417, 99 S.Ct. 693 (1979) (discharge); *Mt. Healthy*, 429 U.S. at 283–284 (failure to rehire); *Elrod v. Burns*, 427 U.S. at 359 (discharged or threatened with discharge); *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S. Ct. 2694, 2697 (1972) (failure to renew contract); *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty., Illinois*, 391 U.S. 563, 574, 88 S. Ct. 1731, 1737 (1968) (discharge); *Keyishian v. Bd. of Regents of Univ. of State of N. Y.*, 385 U.S. 589, 604, 87 S.Ct. 675 (1967) (removal and refusal to hire). *See also Bennis v. Gable*, 823 F.2d 723, 733 (3d Cir. 1987) ("[W]e conclude that as of 1982, the law was "clearly established" that a public employee could not be demoted in retaliation for exercising his rights under the first amendment.").

Defendants maintain that "no clearly established law by the U.S. Supreme Court or Third Circuit would have led them to act otherwise." (Doc. 11, at 13). This statement is in direct conflict with *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 715, 116 S. Ct. 2353, 2356 (1996). In *O'Hare*, a private towing company brought a § 1983 action against the city, challenging its removal from city's rotation list of available towing service contractors. The company, O'Hare Truck Service, Inc., was removed from the list after its owner refused to contribute to respondent mayor's reelection campaign and instead supported his opponent. The Supreme Court held that First Amendment protections extend to an instance where the government retaliates against a contractor, or a regular provider of services, for the exercise of rights of political association or the expression of political allegiance. *O'Hare Truck Serv.*, 518 U.S. at 715.

Thus, at the time of Defendants' alleged conduct, the law was clearly established that Defendants could not retaliate against Plaintiffs for their political activities. No reasonable government official in Defendants' position could have believed that retaliating against Plaintiffs by taking an adverse employment-related action was appropriate conduct. Because I find that Defendants Yannuzzi and DeAndrea are not entitled to qualified immunity, I will deny their motion to dismiss Counts II and III of the Complaint.

## C.   Counts IV & V - Defendants' Violations of Plaintiffs' First, Fifth, and Fourteenth Amendment Rights to Procedural Due Process

Preliminarily, I will dismiss all Fifth Amendment claims because none of the Defendants are federal actors. *See Nguyen v. U.S. Cath. Conf.*, 719 F.2d 52, 54 (3d Cir.1983).

Plaintiffs contend that they were deprived of the liberty interest in their reputation without due process. (Doc 1, ¶¶ 62-73.). The Fourteenth Amendment to the United States Constitution provides that a state may not "deprive any person of life, liberty, or property, without due process of law, . . ." U.S. Const. amend. XIV, § 1. To state a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must allege:

> (1) that he was deprived of a protected liberty or property interest; (2) that this deprivation was without due process; (3) that Defendant subjected the plaintiff,

or caused the plaintiff to be subjected to, this deprivation without due process; (4) that Defendant was acting under color of state law; and (5) that the plaintiff suffered injury as a result of the deprivation without due process.

*Sample v. Diecks*, 885 F.2d 1099, 1113-14 (3d Cir. 1989). *See also Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (holding that a plaintiff must allege that he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property" and the procedures available to him did not provide "due process of law").

### 1.    Liberty Interest

Concurrent to this suit, Plaintiffs instituted an action in the Luzerne County Court of Common Pleas, involving the same parties. There, the court held, *inter alia*, that Plaintiffs lacked any property or contractual right in remaining on the towing referral rotation. (Doc. 11-1). On July 28, 2016, however, The Commonwealth Court of Pennsylvania, Pennsylvania's immediate appellate court, issued a decision which directly addressed whether Plaintiffs can assert a liberty interest to maintain a procedural due process claim. (Doc. 18). The court held that,

> DeLuca did not have a contractual or statutory right to remain on the towing rotation list. However, DeLuca's suspension was imposed upon it with a stigma that allegedly affected its ability to take advantage of other employment possibilities. In particular, DeLuca argued before the trial court and its briefs here that its business suffered a financial loss from lost business due to removal from the rotations, and an additional loss of business from potential customers who thoughts DeLuca went out of business or could no longer provide towing serivce in Hazleton.

(*Id.* at 20). The court concluded that, applying both state and federal law, a liberty interest claim "has been averred." (*Id.* at 22).

In their motion to dismiss, Defendants argued that Plaintiffs are collaterally estopped from claiming a property interest in remaining on the towing rotation because the trial state court decision bars Plaintiffs from relitigating the issue. (Doc. 11, at 7). Defendants' motion to dismiss, however, was filed before the appellate court issued its decision. Defendants' argument that the issue is estopped from relitigation, however, applies with the same force to the appellate decision, which is unfavorable to them.

As the Third Circuit has explained, collateral estoppel requires proof of the following elements: (1) the previous determination was necessary to the decision; (2) the identical issue was previously litigated; (3) the issue was actually decided on the merits and the decision was final and valid; and (4) the party being precluded from re-litigating the issue was adequately represented in the previous action. *See Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc*., 458 F.3d 244, 249 (3d Cir.2006).

Here, Defendants essentially concede all the elements of collateral estoppel. They argue that "Plaintiffs fully and fairly litigated the issue of whether they have a property or contractual interest in getting towing referrals." (Doc. 11, at 8). I agree and extend their reasoning to the appellate decision. As the Pennsylvania appellate court held, Plaintiffs sufficiently state a liberty interest claim. Because all the elements of collateral estoppel under Pennsylvania law are met, I find that Defendants are barred from relitigating the existence of Plaintiffs' liberty interest.

### 2.    Deprivation Without Due Process

Defendants further claim that "DeLuca had a pre-deprivation opportunity to explain her actions to Defendants. Thus, Plaintiffs received a 'notice and an opportunity to be heard,' which satisfies the requirements of due process." (Doc. 11, at 10).

"[O]nce it is determined that the Due Process Clause applies, 'the question remains what process is due.'" *Loudermill*, 470 U.S. at 541 (quoting *Morrisey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). Courts have found that due process "'is not a technical conception with a fixed content unrelated to time, place and circumstances.'" *Matthews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893 (1976) (quoting *Cafeteria & Rest. Workers Union, Local 473, AFL-CIO v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743 (1961)). Instead, courts are to inquire into the circumstances of the deprivation to determine what process is required. *Id.* Accordingly, "'[consideration] of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.'" *Wolff v. McDonnell*, 418 U.S. 539, 560, 94 S. Ct. 2963,

2977 (1974) (quoting *McElroy*, 367 U.S. at 895). Three factors generally guide this determination: "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Matthews, 424 U.S. at 335. The Third Circuit has concluded that "[a]t a minimum, due process requires notice and a hearing." *Wilson v. MVM, Inc.*, 475 F.3d 166, 178 (3d Cir. 2007). Still, "when that notice and hearing must be provided and how intensive the hearing must be is a determination that depends on the balancing of [the] three interests" articulated in *Matthews*. *Id.* The task, then, is to determine whether a plaintiff received the process he or she was due under the circumstances.

Here, DeLuca received notice that she had not complied with the terms of Section 1.06 (C)(3) of the Towing Requirements Policy in the form of a letter stating that her "business has been suspended from towing vehicles for the City of Hazleton." (Doc. 1, at 23, 28). According to the letter, DeLuca had allegedly engaged in conduct that "tends to demean the public image of the Department," because "Facebook posting under [Plaintiffs'] personal account have accused the Mayor of the City of Hazleton with being criminal and accepting bribes." *Id.* The letter, therefore, provided DeLuca with notice of the claims against her.

Due process also "requires 'some kind of a hearing' prior to the discharge of an employee." *Loudermill*, 470 U.S. at 542 (citation omitted). The Supreme Court has noted that one essential component of due process is a pre-termination opportunity to respond. *Id.* The pre-termination hearing, though necessary, "need not be elaborate." *Id.* at 545. Rather, the "formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Id.* (citation and internal quotation marks omitted).

Here, however, no hearing was afforded to Plaintiffs. DeLuca had no opportunity to

respond to the allegations referenced in the letter. She was afforded no hearing to provide the relevant decision-makers with her side of the story or to challenge the City's decision to remove her from the towing list, even though some investigation was, hopefully, conducted to conclude that DeLuca was in fact in violation of the relevant provisions. In addition, as the termination letter stated, the only "recourse to this suspension is through civil litigation." *Id.* In short, the failure to hear from DeLuca on this issue means that she likely did not receive the opportunity to be heard as required by the Fourteenth Amendment. Thus, Plaintiffs have sufficiently set forth a due process claim based on the denial of procedural safeguards to which they were constitutionally entitled. Defendants' motion to dismiss Plaintiffs' due process liberty interest claim will be denied.

**D.    Count VI - Defendants' Violations of Plaintiffs' Fourteenth Amendment Right to Substantive Due Process**

Plaintiffs also assert that Defendants deprived them of a fundamental liberty interest in reputation entitled to substantive due process protections. *Id.* ¶¶ 74-76. Defendants, however, claim that in alleging a substantive due process claim, Plaintiffs also must show conduct "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience," *Kaucher v. County of Bucks*, 455 F.3d 418, 425 (3d Cir. 2006), which, according to Defendants, DeLuca is unable to establish. (Doc. 11, at 9).

Although the Pennsylvania appellate court recognized Plaintiffs' liberty interest in the context of procedural due process, that conclusion "is not necessarily dispositive of the scope of [Plaintiffs'] liberty for purposes of substantive due process." *Wroblewski v. City of Washburn*, 965 F.2d 452, 457 (7th Cir. 1992). Indeed, to the extent that Plaintiffs' substantive due process claim rests on reputational injury that decreased their ability to earn a living, the Third Circuit has held that defamatory statements that curtail a person's business opportunities do not suffice to support a substantive due process claim. *See Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 399–404 (3d Cir.2000) ("[P]recedent makes clear that [a defamation-type claim] cannot present a substantive due process violation in the first place."). *See also Winter v. Pennsylvania State Univ.*, 172 F.

Supp. 3d 756 (M.D. Pa. 2016); *Freidman v. Philadelphia Parking Auth.*, 2015 WL 2337288, at *7 (E.D. Pa. May 14, 2015); *Freeman v. City of Chester*, 2010 WL 4025918, at *4 (E.D. Pa. Oct. 14, 2010); *D & D Associates, Inc. v. Bd. of Educ. of N. Plainfield*, 2005 WL 2416967, at *5 (D.N.J. Sept. 30, 2005).

Therefore, Plaintiffs' substantive due process claim does not survive as a matter of law, and, therefore, will be dismissed with prejudice.

**E.    Count VII - Defendants' Conspiracy to Deprive Plaintiffs of their First and Fourteenth Amendment Rights**

In Count VI of their Complaint, Plaintiffs allege that "Defendants knowingly and maliciously deprived Plaintiffs of their civil rights [by] engaging in . . . conspiratorial conduct" in violation of § 1983. (Doc. 1, ¶ 80).

In order to sufficiently allege a conspiracy, a plaintiff must show "a combination of two or more persons to [commit] a criminal act, or to [commit] a lawful act by unlawful means or for an unlawful purpose." *Hammond v. Creative Financial Planning*, 800 F.Supp. 1244, 1248 (E.D. Pa. 1992); *see also Ammlung v. City of Chester*, 494 F.2d 811, 814 (3rd Cir.1974). A plaintiff must make "specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events." *Id*. "[O]nly allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain other action of the alleged conspirators taken to achieve that purpose will be deemed sufficient." *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir.1989).

In their motion to dismiss, Defendants argue that Plaintiffs are unable state a claim for conspiracy because, "a municipality and its officials are considered a single entity that cannot conspire with itself." (Doc. 11, at 11-12). Plaintiffs, however, contend that "in cases construing [§] 1985, a distinction is made between conspiracies involving persons acting in their official capacities versus those acting in the individual capacities, as in our case." (Doc. 12, at 12-13). The distinction between Yannuzzi's and DeAndrea's individual and official capacities, however, is of no difference here. Even if the aforementioned Defendants acted

in their private capacity, Plaintiffs fail to sufficiently allege conspiracy.[3]

"Agreement is the *sine qua non* of a conspiracy." *Spencer v. Steinman*, 968 F.Supp. 1011, 1020 (E.D.Pa.1997).

> It is not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism. To state a claim for conspiracy under § 1983, plaintiff must claim that, '[t]he private actor ... wrongfully influence[d] the state [actor's] decision ... through a conspiracy, or else the plaintiff must seek his remedy in a state tort claim, not a federal § 1983 suit.'

*Id.* (quoting *Davis v. Union National Bank*, 46 F.3d 24, 26 (7th Cir.1994)).

Plaintiffs do not sufficiently allege that Defendants took their alleged actions due to an agreement to deprive Plaintiffs of their constitutional rights. Plaintiffs utilize the phrases "conspiratorial conduct" and "unlawful conspiracy" in the Complaint but do not provide the facts necessary to demonstrate the existence of an agreement between Yannuzzi, DeAndrea, and the remaining Defendants to deprive Plaintiffs of their right to due process and placement on the towing rotation list. *See Crabtree By & Through Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990) ("[T]he rule is clear that allegations of conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action. A conspiracy cannot be found . . . absent specific facts demonstrating an agreement to commit the alleged improper actions."). *See also Suber v. Guinta*, 902 F. Supp. 2d 591, 608-09 (E.D. Pa. 2012) (granting a motion to dismiss and noting that "even to the extent that defendant Officers are sued in their individual capacities, the [Plaintiffs] have not alleged any actions by defendant Officers,

---

[3] I agree with courts which hold that Plaintiffs' argument that a defendant who acts pursuant to his official duties can act in his individual capacity for the purpose of conspiracy defies common sense because, as is the case here, Defendants Yannuzzi and DeAndrea were able engage in the purported act of removing DeLuca from the towing rotation *only because of their official duties* as Mayor and Chief of the Police. Their individual capacity is irrelevant. *See DeJohn v. Temple University*, 2006 WL 2623274 *5 (E.D. Pa. Sept. 11, 2006). *See also Robison v. Canterbury Village*, Inc., 848 F.2d 424, 431 (3d Cir. 1987) (affirming dismissal of conspiracy claim because the plaintiff "made no allegation of any conspiracy beyond that of [Defendant] conspiring with the corporation in his corporate capacity"). Thus, I find that it is futile for Plaintiffs to pursue this line of argument.

which show, or support a reasonable inference of an agreement among defendant Officers"); *Rosembert v. Borough of East Landsdowne*, 14 F. Supp. 3d 631, 647-48 (E.D. Pa. 2014) (granting a motion to dismiss conspiracy claims where allegations did not provide sufficient facts to allow the court to plausibly determine that specific defendants formally agreed to violate plaintiff's constitutional rights); *Tomino v. City of Bethlehem*, 2010 WL 1348536, at *15-18 (E.D. Pa. Mar. 31, 2010) (granting a motion to dismiss conspiracy claims because the plaintiff failed to establish the existence of a conspiracy by alleging an agreement to commit an unlawful act).

As such, Defendants' motion to dismiss the § 1983 conspiracy claim will be granted.

## F.    Municipal Liability

Defendant City of Hazleton also moves for dismissal on the grounds that the Complaint fails to allege any facts to establish municipal liability pursuant to 42 U.S.C. § 1983. (Doc. 11, at 16).

A municipality may only be held liable under § 1983 when the "execution of a government's policy or custom ... inflicts the injury." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir.1990). While a government policy is established by a "decision maker possessing final authority," a custom arises from a "course of conduct ... so permanent and well settled as to virtually constitute law." *Andrews*, 895 F.2d at 1480 (citing *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Accordingly, a plaintiff seeking to recover from a municipality must: (1) identify an allegedly unconstitutional policy or custom; (2) demonstrate that the municipality, through its deliberate and culpable conduct, was the "moving force" behind the injury alleged; and (3) demonstrate a direct causal link between the municipal action and the alleged deprivation of federal rights. *Board of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

Here, Plaintiffs sufficiently allege that the injury was caused by a municipal policy, namely, removal from the towing rotation list pursuant to Section 1.06 (C)(3) of the Towing Requirements Policy (*See* Doc. 1, at 23, 28), and violation of due process by failing to

provide a pre- or post-deprivation hearing, pursuant to Section 1.06(F) of that same policy. *Id*. Plaintiffs allege that "[t]he suspension of the towing rights of the Plaintiffs was pursuant to a policy and custom of Defendant City of Hazleton . . . in as much as decision makers possessing final authority to establish municipal policy with respect to the action, did do so by official proclamation, policy, or edict." (Doc. 1, at ¶ 48). I find these allegations sufficient to survive a motion to dismiss.

## G.     State Law Claims

In Counts VIII and IX of the Complaint, Plaintiffs allege defamation and commercial disparagement claims under Pennsylvania law.

### 1. Commercial Disparagement

In Pennsylvania, a claim for commercial disparagement requires proof that: 1) the statement is false; 2) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss; 3) pecuniary loss does in fact result; and 4) the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity. *Neurotron Inc. v. Medical Serv. Assoc. of Pa., Inc*., 254 F.3d 444 (3d Cir.2001).

Plaintiffs fail to show that a false statement was made. They claim in a conclusory fashion that "statements made by the individual defendants in the suspension letters and to other media were untrue and any statements of opinion therein were incorrect," (Doc. 1, ¶ 83). However, the statements to which they refer are undeniably true.

The suspension letters state that "a Facebook posting under·[DeLuca's] personal account [has] accused the Mayor of the City of Hazleton with being criminal and accepting bribes." (Doc. 1-1). Plaintiff DeLuca argues that she was not the author of the post, and that her account was hacked. Notably, nowhere does the statement made by Defendants in the suspension letter identify the author of the Facebook post. Plaintiffs do not deny that such a post appeared on DeLuca's Facebook page; in fact, she brought it up to her supervisors' attention. (Doc 1, ¶ 25). The letter removing her from the position does not go any further

than what she herself claims, that a post accusing city officials of various crimes appeared on her Facebook account. As such, the motion to dismiss Plaintiffs' claim of commercial disparagement will be granted.

### 2. Defamation

In Pennsylvania, a plaintiff seeking to recover for defamation bears the burden of proving: 1) the defamatory character of the communication; 2) its publication by the defendant; 3) its application to the plaintiff; 4) the understanding by the recipient of its defamatory meaning; 5) the understanding by the recipient of it as intended to be applied to the plaintiff; 6) special harm resulting to the plaintiff from its publication; and 7) abuse of a conditionally privileged occasion. 42 Pa.C.S. § 8343(a) (1998). *See also McNulty v. Citadel Broad. Co.*, 58 F. App'x 556, 567 (3d Cir. 2003).

Here, Plaintiffs fail to prove publication of the communication by Defendants. *See Elia v. Erie Ins. Exch.*, 430 Pa. Super. 384, 391, 634 A.2d 657, 660 (1993) ("In order for defamation to occur in form of either libel or slander, defamatory statement must be published or communicated to third person."). Plaintiffs do not allege any facts giving rise to a plausible showing that any communication of the allegedly defamatory statements was made to third parties. The Complaint alleges only that the first termination letter was personally delivered to DeLuca, while the second one was mailed to her. However, Plaintiffs fail to put forth any facts indicating that Defendants publicized the contents of the letters. Plaintiffs allege in the Complaint that "[t]he specific communications of the individual Defendants have been repeated and published in the local newspapers and by means of other media and repetition." (Doc. 1, ¶ 88). That is not enough, however; although detailed factual allegations are not required to survive a motion to dismiss, mere conclusory statements will not do. *Twombly*, 550 U.S. at 555.

As evidence of publication by Defendants, Plaintiffs attach a local newspaper article which, notably, also does not claim that Defendants publicized the contents of the letters, nor does it cite to Defendants as a source of disclosure of the contents of the letters. "Where defamation action rests on publication of employee termination letter by employer

to employee only, requirement that defamatory matter be published by employer is not met through proof of employee's compelled self-publication to" third parties, such as a journalist. *See Yetter v. Ward Trucking Corp.*, 401 Pa. Super. 467, 472, 585 A.2d 1022, 1025 (1991); *see also Frank v. Allstate Ins. Co.*, 32 F. Supp. 3d 569, 573 (E.D. Pa. 2014).

Because the Complaint does not contain sufficient allegations of publication of defamatory information by Defendants that could give rise to a plausible claim for relief, Dependants' motion to dismiss will be granted as to this claim.

## H.      Leave to Amend

The Third Circuit has instructed that if a complaint is vulnerable to a 12(b)(6) dismissal, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 237 (3d Cir. 2008); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir.2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir.2000)). Here, because Plaintiffs may be able to allege facts sufficient to state defamation and commercial disparagement claims under Pennsylvania law, I will grant leave to amend Counts VIII and IX of the Complaint. Amendments to Counts VI and VII, however, would be futile, because they fail as a matter of law.

## IV. Conclusion

For the above-stated reasons, the motion to dismiss will be granted in part and denied in part. All Fifth Amendment claims will be dismissed with prejudice as improper. In addition, Defendant Hazleton Police Department will be dismissed from the suit as an improper party. Plaintiffs' substantive due process and civil rights conspiracy claims will be dismissed with prejudice. Plaintiffs' state law defamation and commercial disparagement claims will be dismissed without prejudice. Plaintiffs will be permitted to proceed on their claims in Counts I, II, III, IV, and V of their Complaint.  An appropriate order follows.


October 20, 2016                                            /s/ A. Richard Caputo
Date                                                       A. Richard Caputo
                                                          United States District Judge