## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CYNTHIA DELUCA, DELUCA'S
AUTO REPAIR AND TOWING, INC.,

      Plaintiffs,

         v.

CITY OF HAZLETON, HAZLETON
POLICE DEPARTMENT, FRANK V.
DEANDREA, JR., and JOSEPH
YANNUZZI,

      Defendants.

NO. 3:15-CV-02475

(JUDGE CAPUTO)

## <u>MEMORANDUM</u>

Presently before me is a Motion for Summary Judgment (Doc. 59) filed by Defendants the City of Hazleton (the "City") and Joseph Yannuzzi ("Yannuzzi") (collectively, "Defendants"). In June 2015, Plaintiff DeLuca's Auto Repair & Towing, Inc. ("DeLuca's Auto Repair), owned by Plaintiff Cynthia DeLuca ("DeLuca"), was removed from the City's towing rotation. Plaintiffs contend that this occurred because of their political involvement in the City mayoral primary which took place in May 2015. Plaintiffs also assert that Defendants disseminated false and stigmatizing statements in connection with their removal from the towing rotation in violation of their liberty interest in reputation. Defendants dispute that Plaintiffs were retaliated against in violation of the First Amendment and/or that Plaintiffs were deprived of their liberty interest in reputation without due process of law. Summary judgment will be granted in favor of Defendants on the stigma-plus claims because Plaintiffs were not deprived of a liberty interest in reputation without due process of law. However, because a reasonable jury could find that Plaintiffs' removal from the towing rotation was politically motivated, Defendants' motion for summary judgment with respect to the First Amendment retaliation claim will be denied.

# I. Background

The facts are derived from Defendants' statement of facts, (*see* Doc. 59-3, *generally*), Plaintiffs' opposition statement, (*see* Doc. 70, *generally*), and the documents and testimony of record.

DeLuca is the president and owner of DeLuca's Auto Repair. (*See* Doc. 59-3, ¶ 1; Doc. 70, ¶ 1). Yannuzzi is the former City Mayor, and Frank V. DeAndrea, Jr. ("DeAndrea") is the former City Police Chief. (*See* Doc. 59-3, ¶ 40; Doc. 70, ¶ 40).[1]

In 2013, Plaintiffs applied to perform towing services for the City. (*See* Doc. 59-3, ¶ 15; Doc. 70, ¶ 15). In order to perform such services, Plaintiffs agreed to follow the Hazleton Police Department's Towing Service Requirements. (*See* Doc. 59-3, ¶ 16; Doc. 70, ¶ 16). Plaintiffs were first placed on the City's towing rotation in or around June 2013, and, at that time, there were three (3) other towing companies that provided towing services to the City. (*See* Doc. 59-3, ¶¶ 18-19; Doc. 70, ¶¶ 18-19). Pursuant to the City's towing rotation, one company would perform towing services for the City for a two (2) week period and then the City would rotate to the next company on the list. (*See* Doc. 59-3, ¶ 20; Doc. 70, ¶ 20).

In 2015, Yannuzzi, the City Mayor at the time, was challenged in the Republican mayoral primary by Jeff Cusat. (*See* Doc. 59-3, ¶ 27; Doc. 70, ¶ 27). In the Democratic mayoral primary, Grace Cuozzo ran against Jack Mundie. (*See* Doc. 59-3; ¶ 30; Doc. 70, ¶ 30; *see also* Doc. 59, Ex. "11"). DeLuca supported Cuozzo in her campaign, which was run out of DeLuca's Auto Repair. (*See* Doc. 59-3, ¶¶ 22-23; Doc. 70, ¶¶ 22-23). Ultimately, both Cuozzo and Yannuzzi lost their respective primaries in May 2015. (*See* Doc. 59-3, ¶¶ 28, 31; Doc. 70, ¶¶ 28, 31).

Around this time, DeLuca had several Facebook accounts/pages. (*See* Doc. 59-3, ¶ 32; Doc. 70, ¶ 32). While DeLuca testified that she did not access these pages

---

[1] DeAndrea was also a named defendant in this action, but the parties stipulated to the dismissal of the claims against him. (*See* Doc. 82, *generally*).

from her business computer, her passwords for these accounts were stored on her laptop that she kept at DeLuca's Auto Repair. (*See* Doc. 59-3, ¶¶ 34-35; Doc. 70, ¶¶ 34-35).

Around early June 2015, a Facebook group titled "Hazleton's Corrupts" was created under one of DeLuca's accounts. (*See* Doc. 59, Ex. "13"). That Facebook page included posts alleging corruption by, *inter alia*, Yannuzzi and DeAndrea, and also claimed that another towing company in the City was bribing state and local officials. (*See* Doc. 59-3, ¶¶ 40-42; Doc. 70, ¶¶ 40-42).

DeLuca testified that she learned about the "Hazleton's Corrupts" Facebook group from Sandra DeAndrea, DeAndrea's wife. (*See* DeLuca Dep., 36:10-15, 40:23-41:1). DeLuca denied creating that group to Mrs. DeAndrea and stated that her Facebook account must have been hacked. (*See* Doc. 59-3, ¶ 51; Doc. 70, ¶ 51).

After learning about the "Hazleton's Corrupts" page from his wife, DeAndrea went to DeLuca's Auto Repair to speak with DeLuca, who stated that her account had been hacked. (*See* DeAndrea Dep., 12:1-15:2). DeLuca's theory is that the posts were created by either Dave Sirkot or Dave Basala. (*See* DeLuca Dep., 94:4-9)

At some point thereafter, DeAndrea and Yannuzzi spoke about their response to the Facebook posts. (*See* Doc. 59-3, ¶ 76; Doc. 70, ¶ 76). While DeAndrea testified that he told Yannuzzi that DeLuca claimed her Facebook account was hacked, Yannuzzi testified that he was not so informed. (*See* Doc. 59-3, ¶ 81). Rather, Yannuzzi indicated that he did not know of the purported hacking until he read about it in the newspaper. (*See* Yannuzzi Dep., 112:18-23). Yannuzzi ultimately concluded that the Towing Service Requirements had been violated. (*See* Doc. 59-3, ¶ 84; *see also* Yannuzzi Dep., 29:6-11).

Following his conversation with Yannuzzi, DeAndrea sent Yannuzzi an email stating:

> Mayor,
>
> Based on your conversation I have drafted the attached

suspension letter for DeLuca's Towing. I have not mentioned anything pertaining to the Basala Parking Ticket incident as that is not public knowledge and I do not feel a parking ticket raises to the level of a 3 year suspension of business privileges.

The offense you have discussed with me of the Facebook posting, although not a repeated violation, is what I have listed for the suspension under section 1.06(6).

It is my professional opinion that this does not at all fit the definition for suspension however, after you review, if you feel it is appropriate I shall send the letter.

Please review this and let me know if you want it sent.

Thank you

(Doc. 57, Ex. "G"). The suspension letter reads as follows:

In accordance with Hazleton Police Department Towing Service requirements section 1.06 SUSPENSION OF TOWING SERVICE(S) you are hereby notified that your business has been suspended from towing vehicles for the City of Hazleton.

The specific reasons for this suspension under section six Repeated conduct by any employee of the towing service of a nature which, by means of the relationship the service has with the Department, tends to demean the public image of the Department are as follows:

Facebook posting under your personal account have accused the Mayor of the City of Hazleton with being criminal and accepting bribes. This by means of the relationship DeLuca's Towing has with the City of Hazleton and the Hazleton Police Department, tends to demean the public image of the Department.

Your suspension shall be for three years. It shall commence immediately and shall end June 10, 2018.

Prior to your towing service becoming eligible to receive service calls at the end of this suspension you must take appropriate remedial action. Your towing services recourse to this suspension is through civil litigation.

(Doc. 59, Ex. "17"). The suspension letter, dated June 9, 2015, was signed by DeAndrea. (*See id*.). Pursuant to the cited section of the Towing Service Requirements, towing services can be suspended for "[r]epeated conduct by any employee of the towing service of a nature which, by means of the relationship the

service has with the Department, tends to demean the public image of the Department. (3 year suspension up to and including lifetime revocation of privileges)." (Doc. 59, Ex. "9", § 1.06(C)(6)). The suspension letter was delivered by DeAndrea to DeLuca's husband Richard on June 9, 2015. (*See* Doc. 59-3, ¶ 90; Doc. 70, ¶ 90).

The following day, June 10, 2015, two local newspapers reported on the suspension of DeLuca's Auto Repair. (*See* Doc. 59-3, ¶ 93; Doc. 70, ¶ 93). An article appearing in the Times Leader stated that "Mayor Joe Yannuzzi did acknowledge that tower Cynthia DeLuca had supported a woman he considered his opponent in May's primary election, and criticized her for that support." (Doc. 59, Ex. "11"). The article goes on:

> When contacted about the suspension, Yannuzzi initially cited city regulations when asked why the business was suspended. But he immediately acknowledged his belief that DeLuca's strong support of Cuozzo during her campaign was "over the top."
>
> Yannuzzi said he believed DeLuca Towing employed Dan and Davey Basala, also strong supporters of Cuozzo, during the primary.
>
> "The Basalas drove around and around the block during one of my political events in trucks sporting Cuozzo political advertisement," said Yannuzzi.
>
> "Grace didn't run a campaign against Jack Mundie," he said of Cuozzo's victorious Democratic opponent. "She ran against me."

(*Id.*). Yannuzzi, however, testified that it was incorrectly reported that he criticized DeLuca for supporting Cuozzo. (*See* Yannuzzi Dep., 64:5-14). But he did testify that DeLuca's employees did her campaigning for Cuozzo by driving her trucks around and that was "over the top." (*Id.* at 65:8-66:7). Yannuzzi though denies that DeLuca's support for Cuozzo factored into the suspension decision. (*See id.* at 71:3-6).

On June 12, 2015, Plaintiffs, by letter through counsel, responded to the suspension letter. (*See* Doc. 59-3, ¶ 107; Doc. 70, ¶ 107). Therein, Plaintiffs requested a hearing on the suspension and that the letter be "treated as an appeal from the suspension." (Doc. 59, Ex. "19").

5

After receiving Plaintiffs' June 12, 2015 letter, Yannuzzi and DeAndrea communicated with then-City solicitor Robert Cohen. (*See* Doc. 59-3, ¶ 108; Doc. 70, ¶ 108). Based on the solicitor's review and advice, a revised suspension notice was prepared. (*See* Doc. 59-3, ¶¶ 110-112, 115-116; Doc. 70, ¶¶ 110-112, 115-116). The revised suspension notice, dated June 17, 2015, provides in part:

> The suspension is pursuant to Section 1.06(C)(3) of the Towing Requirements Policy: "The commission of an act by an owner or manager of a towing service involving dishonesty or corruption, when the act directly or indirectly affects the health, welfare or safety of others". The Facebook posting under "Hazleton's Corrupts" created under your name and Facebook account has accused the Hazleton Police Department, the Mayor, Frank Vito and I of being corrupt, accepting bribes and improperly discriminating against your towing company (which is untrue). I enclose a copy of the policy for your convenience. I note that you were given a copy of same when you were originally placed on the list, which you consented to.
>
> . . .
>
> I am copying your Attorney, Kimberly D. Borland, Esq. with this Notice. The Hazleton City Solicitor, Robert M. Cohen, Esq., advises Mr. Borland that no appeal hearing will be provided in this matter, his recourse is via suit, per Section 1.06(F) of the policy. Additionally, any suit claiming constitutional protection of free speech and association for this activity will be met with a counterclaim for defamation and attorney's fees.

(Doc. 59, Ex. "21"). While the revised notice of suspension was signed by DeAndrea, (*see id.*), he did not draft it. (*See* Doc. 57-17, ¶ 53; Doc. 74, ¶ 53).

Plaintiffs filed an appeal of the towing suspension to the Court of Common Pleas of Luzerne County, Pennsylvania. (*See* Doc. 59-3, ¶ 122; Doc. 70, ¶ 122). The Court of Common Pleas dismissed the appeal. (*See* Doc. 59-3, ¶ 123; Doc. 70, ¶ 122). Plaintiffs subsequently sought review of that decision in the Commonwealth Court of Pennsylvania. (*See* Doc. 59-3, ¶ 125; Doc. 70, ¶ 125). On July 28, 2016, the Commonwealth Court reversed, holding that because the "two notices of suspension from the towing rotation are 'adjudications' of a local agency pursuant to the Local Agency Law, DeLuca is entitled to a hearing on the record and to an appeal. We

reverse the trial court's order and remand to the trial court, which shall remand to the Department for an initial hearing." (Doc. 59, Ex. "38").

In or about June 2016, after Yannuzzi was replaced as Mayor by Cusat, Plaintiffs inquired about being reinstated to the towing rotation. (*See* Doc. 59-3, ¶ 131; Doc. 70, ¶ 131). Following several applications, DeLuca's Auto Repair was reinstated to the rotation in early 2017. (*See* Doc. 59-3, ¶¶ 132-137; Doc. 70, ¶¶ 132-137).

In January 2017, around the time DeLuca's Auto Repair was reinstated to the towing rotation, counsel for the parties corresponded regarding Plaintiffs' hearing as directed by the Commonwealth Court. (*See* Doc. 59, Ex. "39"). Ultimately, instead of having a hearing, the parties agreed to the contents of a "Waiver of Hearing" executed by DeLuca in her individual capacity and as manager and owner of DeLuca's Auto Repair. (*See id*.; *see also* Doc. 70, Ex. "2"). The Waiver of Hearing, signed March 7, 2017, states:

> Because the City of Hazleton has reinstated DeLuca's Auto Repair and Towing, Inc. to the towing referral rotation, we waive any right to a hearing pursuant to the Commonwealth Court Order of July 28, 2016 in the case of DeLuca et al. v. Hazleton Police Department et al., Commonwealth Court Docket No. 2401 C.D. 2015 and Luzerne County Court of Common Pleas Docket No. 2015-7833.

> This waiver is without prejudice to the claims made in the matter of Cynthia DeLuca and DeLuca's Auto Repair and Towing, Inc. v. City of Hazleton; Frank DeAndrea, Jr.; and, Joseph Yanzuzzi [sic].

> Defendants waive no defenses in the federal litigation, including but not limited to, the defenses that the ability to have a hearing was an adequate post-deprivation remedy and moots the request for injunctive and/or declaratory relief.

(Doc. 70, Ex. "2").

While Plaintiffs' appeal from the towing suspension was pending in state court, Plaintiffs commenced litigation in this Court. (*See* Doc. 1, *generally*). Defendants moved to dismiss the Complaint. (*See* Doc. 10, *generally*). That motion was granted

7

in part and denied in part, and Plaintiffs were permitted to proceed with their claims against Defendants for First Amendment retaliation (Counts I-II), denial of pre-deprivation procedural due process (Count IV), and denial of post-deprivation procedural due process (Count V). (*See* Doc. 20, *generally*). Plaintiffs were also given leave to file an amended complaint to adequately plead their state law claims, (*see id*.), and they filed their Amended Complaint on November 10, 2016. (*See* Doc. 21, *generally*). Defendants answered the Amended Complaint. (*See* Doc. 23, *generally*).

Following the close of discovery, Defendants filed the instant motion for summary judgment. The motion has now been fully briefed, so it is ripe for disposition.

## II. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A court may grant a motion for summary judgment if, after it considers all probative materials of record, with inferences drawn in favor of the non-moving party, the court is satisfied that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 218 (3d Cir. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S. Ct. 2548, 2556, 91 L. Ed. 2d 265 (1986); *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000)). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law. A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). "In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter . . . ." *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 587, 581

(3d Cir. 2009) (citing *Anderson*, 477 U.S. at 248-49, 106 S. Ct. 2505).

The moving party bears the initial burden to identify "specific portions of the record that establish the absence of a genuine issue of material fact." *Santini*, 795 F.3d at 416 (citing *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548, 2553). If this burden is satisfied by the movant, the burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)). The nonmovant's burden is not satisfied by "simply show[ing] that there is some metaphysical doubt as to the material facts." *Chavarriaga*, 806 F.3d at 218.

### III. Discussion

Remaining in this case are Plaintiffs' First Amendment retaliation (Counts I-II) and procedural due process (Counts IV-V) claims.[2] Defendants move for summary judgment on these claims.

### A. First Amendment Retaliation.

Plaintiffs contend that the City and Yannuzzi retaliated against them in violation of the First Amendment. Specifically, they claim that they were removed from the towing rotation based on DeLuca's political association and affiliation with Cuozzo. (*See* Doc. 21, Counts I-II).

In *Montone v. City of Jersey City*, 709 F.3d 181, 189 (3d Cir. 2013), the Third Circuit explained that a political association retaliation claim

> under the First Amendment has its origins in the Supreme Court's "trilogy" of "political patronage cases." *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 663 (3d Cir. 2002) (citing *Elrod v. Burns*, 427 U.S. 347, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976); *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L. Ed. 2d 574 (1980); *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 110 S. Ct. 2729, 111 L. Ed. 2d 52 (1990)). From these cases and their progeny, "we have derived a

---

[2]    Plaintiffs have withdrawn their commercial disparagement (Count VIII) and defamation (Count IX) claims against Yannuzzi. (*See* Doc. 69, 1).

> three-part test to establish a claim of discrimination based on political patronage in violation of the First Amendment." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007). First, the plaintiff must establish that "she was employed at a public agency in a position that does not require political affiliation." *Id*. Second, the plaintiff must show that she engaged in conduct protected by the First Amendment. *Id*. And finally, the plaintiff must prove that the constitutionally-protected conduct was a substantial or motivating factor for the adverse employment action. *Id*.

*Id*.

The Supreme Court in *Elrod* considered "whether public employees who allege that they were discharged or threatened with discharge solely because of their partisan political affiliation or nonaffiliation state a claim for deprivation of constitutional rights secured by the First and Fourteenth Amendments." *Elrod*, 427 U.S. at 349, 96 S. Ct. 2673. While no opinion in *Elrod* commanded a majority of the Court, five justices agreed that punishing a nonconfidential, nonpolicymaking public employee for exercising his or her rights to politically associate was impermissible. *See id*. at 359, 96 S. Ct. 2673 (plurality opinion) ("The threat of dismissal for failure to provide [support for the favored political party] unquestionably inhibits protected belief and association, and dismissal for failure to provide support only penalizes its exercise"); 427 U.S. at 375, 96 S. Ct. 2673 (Stewart, J., concurring in judgment) ("The single substantive question involved in this case is whether a nonpolicymaking, nonconfidential government employee can be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs. I agree with the plurality that he cannot.").

Four years later in *Branti*, the Court resolved "whether the First and Fourteenth Amendments to the Constitution protect an assistant public defender who is satisfactorily performing his job from discharge solely because of his political beliefs." *Branti*, 445 U.S. at 508, 100 S. Ct. 1287. The Court explained that "[i]f the First Amendment protects a public employee from discharge based on what he has said, it must also protect him from discharge based on what he believes." *Id*. at 515, 100 S.

10

Ct. 1287. Nonetheless, the Court recognized that "party affiliation may be an acceptable requirement for some types of government employment. Thus, if an employee's private political beliefs would interfere with the discharge of his public duties, his First Amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency." *Id*. at 517, 100 S. Ct. 1287. "[T]he ultimate inquiry," said the *Branti* Court, "is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id*. at 518, 100 S. Ct. 1287.

Relevant to the matter *sub judice*, the Supreme Court in 1996 considered "whether the protections of *Elrod* and *Branti* extend to an independent contractor, who, in retaliation for refusing to comply with demands for political support, has a government contract terminated or is removed from an official list of contractors authorized to perform public services." *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 714, 116 S. Ct. 2353, 135 L. Ed. 2d 874 (1996). In *O'Hare*, a towing service provider was on the defendant city's towing rotation list. *See id*. at 715, 116 S. Ct. 2353. A newly elected mayor in 1989 informed the tower that he was satisfied with its work and would continue to be used for towing services. *See id*. Four years later when the mayor was up for reelection, his campaign committee sought a contribution from the towing service provider's owner. *See id*. The owner refused, and instead supported the campaign of his opponent and displayed the opponent's campaign posters at his place of business. *See id*. Shortly thereafter, the towing service provider was removed from the rotation list. *See id*. The towing service provider filed suit, alleging a violation of the First Amendment. *See id*. at 716, 116 S. Ct. 2353. The district court dismissed the complaint on the grounds that *Elrod* and *Branti* did not apply to independent contractors. *See id*. The Seventh Circuit affirmed. *See id*.

The Supreme Court reversed, "declin[ing] to draw a line excluding independent contractors from the First Amendment safeguards of political association afforded to employees." *Id*. at 726, 116 S. Ct. 2353. Rather, the *O'Hare* Court held that "the protections of *Elrod* and *Branti* extend to an instance like the one before us, where government retaliates against a contractor, or a regular provider of services, for the exercise of rights of political association or the expression of political allegiance." *Id*. at 714-15, 116 S. Ct. 2353.

With these principles in mind, Defendants' motion for summary judgment on Plaintiffs' First Amendment retaliation claim will be denied. First, of course, there is no doubt that if DeLuca was a "public employee whose job was to perform tow truck operations, the city could not have discharged [her] for . . . supporting [Yannuzzi's] opponent." *O'Hare*, 518 U.S. at 720, 116 S. Ct. 2353. In that regard, it is undisputed that DeLuca was politically affiliated with Cuozzo during the May 2015 Democratic mayoral primary. (*See* Doc. 59-3, ¶¶ 22-23; Doc. 70, ¶¶ 22-23). Indeed, Cuozzo's campaign was operated out of the office of DeLuca's Auto Repair. (*See* Doc. 59, ¶ 23; Doc. 70, ¶ 23). Plaintiffs' association with - and support of - Cuozzo's candidacy for mayor was protected First Amendment activity.

Plaintiffs have also presented sufficient evidence that their constitutionally-protected association with Cuozzo was a substantial or motivating factor for their removal from the towing rotation. In particular, Plaintiffs point to the comments attributed to Yannuzzi in a newspaper article from the day after they were removed from the towing rotation list. (*See* Doc. 59, Ex. "11"). In that article, Yannuzzi was quoted as saying that DeLuca's support of Cuozzo was "over the top" and that individuals employed by DeLuca's Auto Repair "drove around and around the block during one of my political events in trucks supporting Cuozzo political advertisement." (*Id*.). Given that the removal from the towing list occurred within a month of the May 2015 primaries in addition to Yannuzzi's comments concerning DeLuca's support of Cuozzo's candidacy, Plaintiffs have presented sufficient evidence

for which a jury could reasonably conclude that DeLuca's political affiliation with Cuozzo was a substantial or motivating factor for the issuance of the towing suspension.

Defendant's arguments as to causation do not compel a contrary finding. For one, Defendants suggest that because Cuozzo was a candidate for the Democratic nomination and Yannuzzi was running in the Republican primary, Plaintiffs are unable to prevail on a First Amendment retaliation claim. (*See* Doc. 60, 8-9). Defendants, though, do not cite any authority to substantiate that position. Importantly, even if Yannuzzi and Cuozzo were not political opponents - a point which the record contains evidence to refute - the First Amendment's safeguards in this context are not limited to protection for retaliation from supporting political adversaries. Rather, "the right not to have allegiance to the official or party in power is protected under the First Amendment, irrespective of whether an employee is actively affiliated with an opposing candidate or party." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 272 (3d Cir. 2007). Thus, that Yannuzzi and Cuozzo were candidates in different primaries and not seeking the nomination from the same party is of no moment to Plaintiffs' claim that they were retaliated against for their political affiliation with Cuozzo. Moreover, the record evidence confirms that while they were not candidates for the same nomination in May 2015, Cuozzo and Yannuzzi were political adversaries. (*See* Doc. 59, Ex. "11" (Yannuzzi quoted as stating that Cuozzo "didn't run a campaign against Jack Mundie, . . . She ran against me."); *see also* Yannuzzi Dep., 69:7-14).

Nor are Defendants entitled to summary judgment on the First Amendment retaliation claim based on the argument that the Facebook posts were the sole motivation behind DeLuca's Auto Repair's removal from the towing rotation. (*See* Doc. 60, 8-9). This motivation, Defendants contend, was made clear from the outset and is confirmed by the fact that the suspension took place right after Yannuzzi learned of the posts. (*See id*.). While Defendants may ultimately be validated on that

position, that is not properly decided on the instant motion. "'In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Montone*, 709 F.3d at 191 (alterations omitted) (quoting *Marino v. Indus. Crafting Co.*, 358 F.3d 241, 247 (3d Cir. 2004)); *accord Monteiro v. City of Elizabeth*, 436 F.3d 397, 404-05 (3d Cir. 2006) ("Motive is a question of fact that must be decided by the jury, which has the opportunity to hear the explanations of both parties in the courtroom and observe their demeanor."). As explained above, there is sufficient evidence in the record for a reasonable jury to conclude that DeLuca's support of Cuozzo was a substantial or motivating factor in DeLuca's Auto Repair being removed from the towing rotation. It follows that the City and Yannuzzi are not entitled to summary judgment with respect to the First Amendment retaliation claim.

## B. Due Process.

Plaintiffs contend in Count IV of the Amended Complaint that they were deprived of their liberty interest in reputation without pre-deprivation due process, while in Count V they allege that they were deprived of this interest without post-deprivation due process. (*See* Doc. 21, Counts IV-V). To sustain such a claim here, Plaintiffs "must show that: (1) Defendants deprived [them] of an individual liberty interest that is encompassed within the Fourteenth Amendment's protection, and (2) the procedures Defendants made available to [them] did not provide due process of law." *Steele v. Cicchi*, 855 F.3d 494, 507 (3d Cir. 2017) (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006)). The deprivation of a liberty interest in reputation requires "a plaintiff to show a stigma to his reputation plus deprivation of some additional right or interest." *Hill*, 455 F.3d at 236 (citing *Paul v. Davis*, 424 U.S. 693, 701, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976)). "Although *Paul*'s 'stigma-plus' test arises most often in situations where the plaintiff is (or was) a government employee, the liberty interest also extends to independent contractors." *Jones v.*

*McNeese*, 746 F.3d 887, 898 (8th Cir. 2014) (internal citation omitted) (citing *Transco Sec., Inc. v. Freeman*, 639 F.2d 318, 321 (6th Cir. 1981) ("While the deprivation of the right to bid on government contracts is not a property interest . . . , the bidder's liberty interest is affected when that denial is based on charges of fraud and dishonesty."); *Neu v. Corcoran*, 869 F.2d 662, 667 (2d Cir. 1989) ("[*Paul*] did not say that 'employment' had to be government employment.")); *see also Hill*, 455 F.3d at 238 ("A public employee who is defamed in the course of being terminated or constructively discharged satisfies the 'stigma-plus' test even if, as a matter of state law, he lacks a property interest in the job he lost" and noting that "other courts have come to this conclusion, mostly based on the Supreme Court's language in *Paul v. Davis*").

Here, Defendants contend that they are entitled to summary judgment because Plaintiffs are unable to make out the necessary elements of a stigma-plus claim. (*See* Doc. 60, 14; Doc. 79, 7-11). Plaintiffs, in opposition, argue that collateral estoppel precludes Defendants from contesting the existence of a liberty interest in this litigation. (*See* Doc. 69, 15-16). Defendants disagree. Instead, Defendants say that both my prior decision on the motion to dismiss and the Commonwealth Court's decision determined only that the facts pled by Plaintiffs stated a deprivation of liberty interest claim, not that Plaintiffs actually proved such a claim. (*See* Doc. 79, 7-11).

Defendants are correct that the these decisions reflect that Plaintiffs sufficiently pled the existence of a protected liberty interest, not that one was proven. Notably, the Commonwealth Court held that a "'stigma-plus' situation has been averred which, if proved, would qualify as a type of privilege referenced in the definition of 'adjudication' in the Local Agency Law." (Doc. 59, Ex. "38", 22-23). As I explained in resolving Defendants' motion to dismiss, "the Commonwealth Court of Pennsylvania . . . issued a decision which directly addressed whether Plaintiffs can assert a liberty interest to maintain a procedural due process claim." (Doc. 19, 13). I went on to say that "the Pennsylvania court held [that] Plaintiffs sufficiently state a

liberty interest claim." (*Id*.). Those decisions, though, do not bar Defendants from arguing here at summary judgment that they are entitled to judgment as a matter of law on Plaintiffs' stigma-plus claim.[3]

Accordingly, Plaintiffs' claim requires a stigma to their reputation plus the deprivation of an additional right or interest. *Hill*, 455 F.3d at 236.

### 1. Stigma Prong.

Defendants dispute that Plaintiffs are able to demonstrate the stigma prong of the liberty interest claim. To satisfy this prong, Plaintiffs must show that the purportedly stigmatizing statements (1) where made publicly, and (2) were false. *See Hill*, 455 F.3d at 236 (citations omitted); *Brown v. Montgomery Cty.*, 470 F. App'x 87, 91 (3d Cir. 2012) (explaining that to establish the "stigma" prong, the employee must show "1) publication of 2) a substantially and materially false statement that (3) infringed upon the reputation, honor, or integrity of the employee"). Plaintiffs claim that stigmatizing statements were made in: (1) the June 9, 2015 suspension letter; (2) the June 17, 2015 revised suspension letter; (3) the June 10, 2015 Times Leader article; and (4) the June 10, 2015 Standard Speaker article.

With respect to the purportedly stigmatizing statements in the June 9, 2015 and June 17, 2015 suspension letters, Defendants are entitled to summary judgment. The first of these letters was sent only to Plaintiffs, while the second was sent to Plaintiffs, their counsel, Yannuzzi, and the City solicitor. (*See* Doc. 59, Exs. "17" & "21"). In other words, these were private communications between Plaintiffs and Defendants. Since the suspension letters were not made public, Plaintiffs cannot rely on these letters to meet the stigma requirement of their liberty interest claim. *See, e.g., Judge*

---

[3]     In considering Defendants' motion to dismiss, I did state that "[b]ecause all the elements of collateral estoppel under Pennsylvania law are met, I find that Defendants are barred from relitigating the existence of Plaintiffs' liberty interest." (Doc. 19, 14). While this statement is broad, it is clear when read in context that I, like the Commonwealth Court, was speaking to the adequacy of the pleading, *i.e.*, "Plaintiffs sufficiently state[d] a liberty interest claim. (*Id*.).

*v. Shikellamy Sch. Dist.*, 135 F. Supp. 2d 284, 295 (M.D. Pa. 2015) (statements made in a private letter were not alleged to be "made public as required to state a deprivation of a liberty interest."); *see also Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005) ("The defamatory statement must be sufficiently public to create or threaten a stigma; hence, a statement made only to the plaintiff, and only in private, ordinarily does not implicate a liberty interest.").

This is true even though the content of the first suspension letter is discussed in the Times Leader article. (*See* Docs. 59, Exs. "11" & "13"). To be sure, that article quotes from the June 9, 2015 suspension letter. (*See* Doc. 59, Exs. "11" & "17"). But Plaintiffs have pointed to no evidence in the record indicating that Defendants were the source of the dissemination of the letter to the newspaper. Without such evidence, Plaintiffs have not presented enough facts to support their liberty interest claim with respect to the statements contained in the suspension notice letter. *See, e.g., Smith v. Borough of Dunmore*, 516 F. App'x 194, 201 (3d Cir. 2013) ("although the article was based on a letter leaked from the Borough Council, Smith has presented no facts linking the Borough or any of the Defendants with the dissemination of the source to the newspaper. As a result . . . he has not presented facts enough to support his liberty interest due process claim[.]"); *Matsey v. Westmoreland Cty.*, 185 F. App'x 126, 133 (3d Cir. 2006) ("Matsey is not entitled to a name-clearing hearing to correct false and stigmatizing information that was published or disseminated by someone other than Appellees, such as through independent media investigation or speculation, or because his attorney chose to speak with a reporter. *Roth* does not impose an obligation on government employers to correct false information published or disseminated by others."). Likewise, Plaintiffs have not pointed to any evidence indicating that the revised suspension notice (which post-dates the two newspaper articles identified in the record) was publically disseminated.

That leaves the two newspaper articles as the bases for Plaintiffs' stigma-plus claim. Those articles contain public statements made by Yannuzzi. (*See* Docs. 59,

Exs. "11" & "13"). Furthermore, a reasonable finder of fact could find that these statements were substantially and materially false and infringed upon Plaintiffs' reputation, honor, or integrity. *See, e.g.*, *Ersek v. Twp. of Springfield*, 102 F.3d 79, 83-84 (3d Cir. 1996) (stigmatizing statement must be "substantially and materially false"). Plaintiffs have made the necessary stigma showing on their liberty interest claim.

### 2. Plus Prong.

The second prong of Plaintiffs' liberty interest claim requires proof of a sufficient plus. *See Hill*, 455 F.3d at 236-39 (defamation occurring in connection with discharge is sufficient to satisfy the plus prong). The removal of Plaintiffs from the City towing rotation appears to satisfy this prong. *See, e.g.*, *Gallagher v. New York City Health & Hosps. Corp.*, 733 F. App'x 3, 7 n.2 (2d Cir. 2018) (contractor's termination was an adequate plus for stigma-plus claim); *Bertuglia v. City of New York*, 133 F. Supp. 3d 608, 639-40 (S.D.N.Y. 2015) ("The termination of a government contract is a loss that would typically satisfy the 'plus' prong of a government-imposed stigma that represents a deprivation of liberty and property."); *Coleman & Williams, Ltd. v. Wisconsin Dep't of Workforce Dev.*, 401 F. Supp. 2d 938, 945 (E.D. Wisc. 2005) (corporate plaintiff can proceed on liberty interest in reputation due process claim).

### 3. Process Due.

Having found that Plaintiffs present sufficient evidence to satisfy both prongs of the stigma-plus test, the question becomes what process were Plaintiffs owed with respect to the alleged denial of their liberty interest in reputation. *See, e.g.*, *Montanez v. Sec. Pa. Dep't of Corr.*, 773 F.3d 472, 482 (3d Cir. 2014). Procedural due process claims are governed by the standard set forth by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). Under that standard, a court is to weigh three factors: (1) "the private interest that will be affected by the official action", (2) "the risk of an erroneous deprivation of such interest through the procedures used" and the value of "additional or substitute procedural

safeguards", and (3) the governmental interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Id*.; *see also Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir. 2011) ("In assessing what process is due, this Court considers the factors set out in *Mathews v. Eldridge*").

As a default rule, "[i]n situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking." *Zinermon v. Burch*, 494 U.S. 113, 132, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990). Thus, where the pre-deprivation safeguards "would be of use in preventing the kind of deprivation alleged," the state must provide such a hearing. *Id*. at 139, 110 S. Ct. 975. "Conversely, in situations where a predeprivation hearing is unduly burdensome in proportion to the liberty interest at stake, or where the State is truly unable to anticipate and prevent a random deprivation of a liberty interest, postdeprivation remedies might satisfy due process." *Id*. at 132, 110 S. Ct. 975 (internal citation omitted); *see also Montanez*, 773 F.3d at 483 ("Where pre-deprivation process is not feasible, this default rule does not apply."). Nonetheless, "[i]t is by now well established that 'due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.'" *Gilbert v. Homar*, 520 U.S. 924, 930, 117 S. Ct. 1807, 138 L. Ed. 2d 120 (1997) (quoting *Cafeteria & Rest. Workers v. McElroy*, 367 U.S. 886, 895, 81 S. Ct. 1743, 6 L. Ed. 2d 1230 (1961)). "'[D]ue process is flexible and calls for such procedural protections as the particular situation demands.'" *Id*. (alteration in original) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)). The Supreme Court has thus "'rejected the proposition that [due process] always requires the State to provide a hearing prior to the initial deprivation of property.'" *Id*. (emphasis and alteration in original) (quoting *Parratt v. Taylor*, 451 U.S. 527, 540, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981)).

Here, Defendants contend that Plaintiffs were entitled only to post-deprivation procedures, and that they ultimately waived the hearing that was ordered as a result of the state court litigation. (*See* Doc. 58, 7-8; Doc. 60, 3-4). In opposition, Plaintiffs reiterate that Defendants provided no pre-deprivation due process, and the post-deprivation process provided was inadequate, namely, that no hearing was offered to Plaintiffs, despite their demand for same, until 19 months after the removal from the towing rotation. (*See* Doc. 69, 16-18; Doc. 72, 8-10). With respect to the denial of pre-deprivation process, Plaintiffs emphasize that "[w]here a pre-deprivation hearing is constitutionally required but not provided, no amount of post-deprivation process is adequate to satisfy the demands of the Due Process Clause." (Doc. 72, 8). While this is true, *see, e.g., Alvin v. Suzuki*, 227 F.3d 107, 120 (3d Cir. 2000) ("if the Constitution requires pre-termination procedures, the most thorough and fair post-termination hearing cannot undo the failure to provide such procedures."), Plaintiffs have not identified any binding or persuasive authority holding that a pre-deprivation hearing is constitutionally required in the circumstances presented in this case. (*See* Doc. 72, *generally*). Defendants point to this in their reply brief, noting that Plaintiffs "cite no case law on point factually on the issue of pre or post deprivation due process in terms of a liberty interest." (Doc. 79, 2).

### a. Pre-Removal Process.

In *Segal v. City of New York*, 459 F.3d 207, 214 (2d Cir. 2006), the Second Circuit considered "whether the availability of an adequate post-termination name clearing hearing is sufficient to defeat an at-will employee's stigma-plus claim, or whether due process demands a pre-termination hearing." The *Segal* court held that "in the context of an at-will government employee, a reasonably prompt, post-termination name clearing hearing satisfies constitutional due process as long as the procedures afforded at such a hearing are sufficient to protect the employee's reputational and professional interests." *Id.* at 218.

To reach its holding, the Second Circuit applied the balancing test set forth by

the Supreme Court in *Mathews*. *See id*. at 215-16. First, the court noted that an at-will employee's private interests are his or her "reputational interest, and how that interest can effect [his or her] standing in the community and [his or her] future job prospects." *Id*. at 215.

Second, "[t]he government interest at stake in a stigma-plus claim is its ability to execute and explain its personnel decisions quickly. . . . This interest is heightened in the case of an at-will employee. The government has wide latitude when it comes to retaining or dismissing such employees." *Id*.; *see also Graham v. City of Philadelphia*, 402 F.3d 139, 147 (3d Cir. 2005) ("The government has a strong interest in preserving its officials' ability to make personnel decisions and communicate the reasons for those decisions to the public . . . .").

Lastly, *Segal* observed that "the risk inherent in a stigma-plus claim is the risk that the false charges against the plaintiff will go unrefuted and that her name will remain stigmatized. The risk will vary depending on the effectiveness of the procedures available and the promptness by which they are afforded." *Segal*, 459 F.3d at 215 (alterations and internal citation omitted).

The Second Circuit went on:

> Although a pre-termination hearing would provide Segal with the opportunity to refute any stigmatizing statements prior to her entry into the job market, such a hearing comes at too high a cost to the government. The government's important interests - in both explaining its employment decisions and exercising its right to terminate an at-will employee immediately - would be unduly impaired if we were to require a pre-termination hearing in such circumstances. Indeed, accepting Segal's argument would effectively mandate that the government hold a pre-termination hearing any time it provided an explanation why it decided to fire an at-will employee. If the government offered such an explanation, and that explanation implicated the employee's reputational or professional interests, as would usually be the case, the government would have to hold a pre-termination hearing or risk being haled into court, where the plaintiff need only raise the issue of falsity in order to state a claim. Such a rule would provide the government with a powerful incentive to forgo any explanation of its termination decisions, at a cost to the public as well.

Because an at-will employee lacks a property interest in continued employment, she has no right to a particular outcome following an adequate name-clearing hearing; the government is simply required to provide her with an opportunity to salvage her name. In our view, there is no reason to believe that this limited right - a meaningful opportunity to clear one's name - cannot be adequately vindicated at a reasonably prompt, post-termination name-clearing hearing.

*Id*. at 216 (internal citation omitted).

*Segal* provides persuasive support to conclude that pre-termination process was not constitutionally mandated in the matter *sub judice*, so I adopt its reasoning here. While DeLuca's Auto Repair was a City contractor and not an employee, the Second Circuit's reasoning is equally applicable in this case. Of note, Plaintiffs do "not contest that [they] do not have a legally recognized contractual or property interest in remaining in Hazleton Police Department's . . . towing rotation." (Doc. 59, Ex. "37", 5); *cf. Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1253 (3d Cir. 1994) (towing provider did not have a constitutionally protected property interest in providing towing services on state highway). *Segal* is consistent with other authority. *See*, *e.g.*, *Hammer v. City of Osage Beach*, 318 F.3d 832, 840 (8th Cir. 2003) (holding that post-deprivation hearing fulfilled purpose of clearing aggrieved party's name); *Rankin v. Independent School Dist. No. I-3*, 876 F.2d 838, 842 (10th Cir.1989); *Buxton v. City of Plant City*, 871 F.2d 1037, 1046 (11th Cir.1989); *Campbell v. Pierce Cty.*, 741 F.2d 1342, 1345 (11th Cir. 1984) ("Because it is provided simply to cleanse the reputation of the claimant, the hearing need not take place prior to his termination or to the publication of related information adverse to his interests," and "The identification of appellant's claim as the deprivation of a liberty interest is dispositive of appellant's contention that she was entitled to a pre-termination hearing. The only process required in this case is the kind of 'name-clearing' hearing described in *Codd v. Velger* and *In Re Selcraig*, *supra*; and such a hearing is not required to be held prior to termination."); *In re Selcraig*, 705 F.2d 789, 796 (5th Cir. 1983) ("The hearing . . . is not a prerequisite to publication [of adverse material] and the state is not obliged

to tender one."); *Stone v. Town of Irasburg*, 98 A.3d 769, 780 (Vt. 2014) ("While deprivations of a property interest require a predeprivation hearing, when there is a deprivation of a liberty interest, the process required is a post-deprivation name-clearing hearing."); *accord Ersek v. Twp. of Springfield*, 102 F.3d 79, 84 (3d Cir.1996) ("[t]he principal relief to which an individual is entitled should the government's stigmatizing comments rise to the level of a due process violation is a hearing to clear his name."); *but see Schleck v. Ramsey Cty.*, 939 F.2d 638, 642 n.5 (8th Cir. 1991) (observing that while "other circuits have ruled that only a post-termination name-clearing hearing is required," the Eighth Circuit has "at least implied that a pre-termination name clearing hearing may be required."); *Demko v. Luzerne County Community College*, 113 F. Supp. 2d 722 (M.D. Pa. 2000) ("the College's dissemination of the reasons for Demko's discharge implicated a liberty interest. Under these circumstances, he was entitled to an opportunity to be heard before he was fired and the press release issued."). Thus, so long as Plaintiffs had available an adequate post-termination process, their stigma-plus claim fails. I consider that below.

### b.    Post-Removal Process.

There is no dispute that, given the Commonwealth Court's decision, Pennsylvania's Local Agency Law, 2 Pa. C.S.A. §§ 553-554, 752-754, applied to Plaintiffs' removal from the towing rotation. (*See* Doc. 59, Ex. "38"). Because Plaintiffs had the right to appeal the City's decision to the state court under the Local Agency Law, "the state offered [them] sufficient process to protect [their] . . . rights." *McDaniels v. Flick*, 59 F.3d 446, 460-61 (3d Cir. 1995).

This Court's decision in *Demko v. Luzerne County Community College*, 113 F. Supp. 2d 722 (M.D. Pa. 2000) is instructive on this point. There, the plaintiff was discharged from his employment with the defendant college. *See id.* at 726-27. He was subsequently informed that the college did "not intend to offer any post-termination hearing." *Id.* at 727 (internal alterations omitted). The plaintiff claimed, *inter alia*, that the refusal to provide a post-termination hearing coupled with the

23

dissemination of the reasons for his termination deprived him of his liberty interest in reputation. *See id*. at 734-36.[4]

In accordance with *McDaniels*, the *Demko* court emphasized that the procedural protections provided by the Local Agency Law satisfied the requirements of the Due Process Clause as to the plaintiff's liberty interest claim. *See id*. at 737. And, the "fact that [the plaintiff] was not accorded the hearing required by the Local Agency Law does not entitle him to seek relief under § 1983 for the denial of due process. As *McDaniels* recognized, it is enough if the state offered [the plaintiff] sufficient process to protect his rights. In this regard, [the plaintiff] had the right to avail himself of judicial review despite the absence of a hearing conducted by the College." *Id*. The court also noted that "Pennsylvania courts have held that where the agency fails to accord the aggrieved party an opportunity to be heard, the aggrieved party is entitled to a remand to the agency for a hearing." *Id*. Thus, "the availability of state court review of the College's actions, whether or not [the plaintiff] made use of that review, satisfied the requirements of the due process clause." *Id*. (citations omitted).

Here, similar to *Demko*, state court review of Plaintiffs' removal from the towing rotation was available by way of the Local Agency Law, a process which Plaintiffs in fact utilized (and which resulted in the Commonwealth Court remanding for an agency hearing). This, as *McDaniels* and *Demko* make clear, provided sufficient process to protect Plaintiffs' rights.

Nonetheless, Plaintiffs argue that due process requires provision of a hearing "at a meaningful time," and the hearing that was ultimately offered by the City following the state court litigation was 19 months after the removal from the towing rotation. (*See* Doc. 72, 9-10). This delay, Plaintiffs say, was constitutionally impermissible. (*See id*.). I do not agree.

---

[4] The *Demko* plaintiff also asserted a deprivation of property interest claim, but that claim was unavailing because he "had no property interest in his employment." *Demko*, 113 F. Supp. 2d at 733.

"The Due Process Clause requires provision of a hearing at a meaningful time." *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 547, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) (citing *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965)). The "timing and nature of the required hearing will depend on appropriate accommodation of the competing interests involved." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982). Although "[a]t some point, a delay in the post-termination hearing would become a constitutional violation," *id.*, "the significance of such a delay cannot be evaluated in a vacuum." *FDIC v. Mallen*, 486 U.S. 230, 242, 108 S. Ct. 1780, 100 L. Ed. 2d 265 (1988).

> In determining how long a delay is justified in affording a post-suspension hearing and decision, it is appropriate to examine the importance of the private interest and the harm to this interest occasioned by delay; the justification offered by the Government for delay and its relation to the underlying governmental interest; and the likelihood that the interim decision may have been mistaken.

*Id.* (citing *Logan*, 455 U.S. at 434, 102 S. Ct. 1148; *Mathews*, 424 U.S. at 334-35, 96 S. Ct. 893). "The key point, however, is that the delay must be 'unjustified.'" *Hill*, 411 F.3d at 134.

Plaintiffs' liberty interest is, of course, important. And, as the Commonwealth Court held, Defendants were incorrect in asserting that Plaintiffs were not entitled to a hearing under the Local Agency Law. But, the 19 month delay cited by Plaintiffs resulted from pending litigation.[5] In that regard, Plaintiffs' right to a post-deprivation hearing was not decided until the Commonwealth Court issued its decision. *See*, *e.g.*, *Lane v. City of Pickerington*, 588 F. App'x 456, 467 (6th Cir. 2014) ("defendants were entitled to rely on the Ohio Fifth District Court of Appeals' initial denial of relief. The delay was not unreasonably prolonged because Lane's right to a post-deprivation

---

[5] The Commonwealth Court issued its decision on July 28, 2016. (*See* Doc. 59, Ex. "38"). Review of the Commonwealth Court docket indicates that it remitted the record to the Court of Common Pleas on September 28, 2016.

hearing was not determined until the Ohio Supreme Court and the Fifth District Court of Appeals on remand issued their opinions, two years after the termination."). Plaintiffs do not contend that Defendants unreasonably delayed offering post-removal proceedings after the issuance of the Commonwealth Court's decision. In essence, "[t]he process [Plaintiffs] received was not simply delayed; it was ongoing." *Id.*; *see also Alton Land Trust v. Town of Alton*, 745 F.2d 730, 732 (1st Cir. 1984) (two and one-half year litigation was not inordinate delay). Additionally, the Third Circuit in *Ritter v. Cohen*, 797 F.2d 119, 123-24 (3d Cir. 1986), held that a delay of 20 months between the alleged deprivation and the post-termination hearing did not violate plaintiff's due process rights. *See id.* (citing *Givens v. U.S. R.R. Bd.*, 720 F.2d 196, 201 (D.C. Cir. 1983) (nineteen-month delay to adjudicate an appeal of denial of railroad benefits does not violate due process, where plaintiff offers no evidence of intentional delay)); *accord Hill*, 411 F.3d at 134 ("mere allegation of a . . . twenty month delay without supplementary allegations concerning the cause of the delay does not state a constitutional claim."). On these facts, the delay in offering a post-removal hearing was not unjustified. So Plaintiffs' due process rights were not violated.

Accordingly, because Plaintiffs were not deprived of a liberty interest in reputation without due process of law, summary judgment will be granted in favor of Defendants on Counts IV and V of the Amended Complaint.

**C.  Qualified Immunity.**

Yannuzzi next argues that he is entitled to summary judgment on the remaining First Amendment claim on qualified immunity grounds.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, - - - U.S. - - -, 135 S. Ct. 2042, 2044, 192 L. Ed. 2d 78 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664, 132 S. Ct. 2088, 182 L. Ed. 2d 985 (2012)). The Third Circuit has remarked that qualified immunity provides "ample protection to all but the plainly incompetent

or those who knowingly violate the law." *Blackhawk v. Pa.*, 381 F.3d 202, 215 (3d Cir. 2004). "In considering the applicability of qualified immunity, courts engage in a two-pronged examination." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015). "First, a court must decide 'whether the facts that a plaintiff has shown make out a violation of a constitutional right.' And second, the court must determine 'whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct.' Courts may begin their consideration with either prong." *Id*. (alteration omitted) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)).

"To be clearly established, a right must be sufficiently clear 'that every reasonable official would have understood that what he is doing violates that right.'" *Reichle*, 566 U.S. at 664, 132 S. Ct. 2088 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011)). This means "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. The Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Taylor*, 135 S. Ct. at 2044. Essentially, "in light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002). This may be the case "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct violated constitutional rights." *Id*. at 740, 122 S. Ct. 2508 (citation omitted).

Yannuzzi is not entitled to qualified immunity on the First Amendment retaliation claim. Assuming Plaintiffs are correct that they were removed from the towing rotation based on their political association with Cuozzo, the law was clearly established that so doing would violate the First Amendment. Indeed, the Supreme Court's decision in *O'Hare*, 518 U.S. at 714-15, 116 S. Ct. 2353 is on-point and renders the unlawfulness of such conduct, if true, apparent. And, as explained above,

there is sufficient evidence of record to find that Plaintiffs' political association was a substantial or motivating factor in the adverse action taken against them. Because only the plainly incompetent would believe that Plaintiffs could be removed from the towing rotation for their political association, qualified immunity in favor of Yannuzzi on the First Amendment retaliation claim is not warranted.[6]

## D.    Municipal Liability.

Lastly, the City seeks summary judgment on Plaintiffs' *Monell* claim. "[M]unicipalities and other local government units [are] to be included among those persons to whom § 1983 applies," and municipalities "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). In *Monell*, the Supreme Court held that a municipality will not be found liable for the unconstitutional acts of a state actor unless the conduct that caused the harm was pursuant to a government policy, custom, or practice. *See Monell*, 436 U.S. at 690-91, 98 S. Ct. 2018. A § 1983 claim against a municipality thus requires a plaintiff to: (1) identify a policy or custom that deprived him of a federally protected right; (2) demonstrate that the municipality, by its deliberate conduct, acted as the "moving force" behind the alleged deprivation; and (3) establish a direct causal link between the policy or custom and the plaintiff's injury. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997); *Bell v. City of Phila.*, 629 F. App'x 214, 216 (3d Cir. 2015). The Third Circuit has explained that a municipality can be liable for the torts of its employees in one of three ways:

---

[6]    Since Plaintiffs have not demonstrated a violation of their due process rights, I do not need to decide whether Yannuzzi is entitled to qualified immunity on the stigma-plus claim.

> First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, *Jett v. Dallas Independent School District*, 491 U.S. 701, 737, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989); second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986); third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988).

*McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005).

The City is not entitled to summary judgment on the First Amendment retaliation claim. For one, Plaintiffs were removed from the towing rotation pursuant to an alleged violation of the Towing Service Requirements, *i.e.*, a governmental policy. Additionally, the alleged constitutional violations occurred by way of the actions of DeAndrea, the Chief of Police, as directed by Yannuzzi, the City Mayor. (*See* DeAndrea Dep., 16:23-17:6). Actions through such policy-making individuals can qualify as acts of official government policy. *See* 11 Pa. C. S. A. § 12007 (providing that "[t]he chief of police shall obey the orders of the mayor"). Summary judgment will not be granted in favor of the City on the remaining *Monell* claim.

## IV. Conclusion

For the above stated reasons, the motion for summary judgment filed by the City and Yannuzzi will be granted in part and denied in part. Summary judgment in favor of the City and Yannuzzi will be granted on Plaintiffs' claims in Counts IV, V, VIII, and IX of the Amended Complaint. The City and Yannuzzi's motion for summary judgment with respect to the First Amendment retaliation claims (Counts I-II) will be denied.

An appropriate order follows.

June 4, 2019         /s/ A. Richard Caputo
Date              A. Richard Caputo
               United States District Judge